Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DELIA VIVAS BARLUCEA<br><br>Peticionaria<br><br>vs.<br><br>ERICK DAVID ASTACIO MARRERO<br><br>Recurrido | KLCE202200825 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2019RF01148<br><br>Sobre: Divorcio (R.I) |

Panel integrado por su presidente, el Juez Ronda del Toro, la Jueza Díaz Rivera y la Jueza Martínez Cordero[1] .

Martínez Cordero, jueza ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Comparece ante nos, la señora Delia M. Vivas Barlucea (en adelante, señora Vivas Barlucea y/o peticionaria), a través de un *Recurso de Certiorari*, y nos solicita la revocación de la *Resolución y Orden* emitida el 8 de junio de 2022[2], por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI) en la cual declaró No Ha Lugar el cambio o transferencia de escuela de la menor AAV (en adelante, la menor), solicitado por la peticionaria. No obstante, instruyó a las partes a continuar con el proceso para que la menor concluyera sus evaluaciones y recibiera los servicios de educación especial a través del Programa de Educación Especial del Departamento de Educación, y que se mantuviera informado al tribunal del proceso.

Examinado el recurso de autos, así como la totalidad del expediente ante nuestra consideración, incluyendo las posiciones de

---

[1] Véase Orden Administrativa OATA-2023-001 del 9 de enero de 2023 en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución del Hon. Felipe Rivera Colón.
[2] Apéndice de la peticionaria, Anejo 1. Transcrita el 14 de junio de 2022 y notificada el 15 de junio de 2022.

las partes, la transcripción de la vista evidenciaria y cónsono a nuestro ordenamiento jurídico, expedimos el auto de *Certiorari* y se *confirma* y *modifica,* la *Resolución y Orden* recurrida, por los fundamentos que expondremos a continuación.

**I**

Producto del matrimonio entre la peticionaria y el señor Erick D. Astacio Marrero (en adelante, señor Astacio Marrero y/o recurrido) procrearon a la menor AAV, quien nació el 8 de junio de 2015.[3] A esta fecha, la menor debe contar con siete (7) años. El matrimonio entre las partes quedó disuelto el 6 de diciembre de 2019, mediante *Sentencia de Divorcio*.[4] En su *Sentencia,* el TPI determinó que la custodia provisional se ejercería de forma compartida entre ambos progenitores. Luego, tras varios incidentes procesales, el 20 de abril de 2020, se presentó un *Informe Social Forense* el cual recomendó que la patria potestad y la custodia fuese compartida entre ambos progenitores.[5] Sin embargo, tomando conocimiento judicial del caso *Delia M. Vivas Barlucea v. Erick D. Astacio Marrero*, KLAN202000004, destacamos que, actualmente, la custodia provisional de la menor es ejercida exclusivamente por la señora Vivas Barlucea y que al momento de la presentación de este recurso, la determinación de custodia permanente se encontraba *sub judice.*

En lo atinente a la controversia ante nuestra consideración, previo a que las partes se separaran, estos acordaron que la menor recibiría servicio de cuido en la escuela Leadership Christian Academy (en adelante, LCA) comenzando en agosto del año 2019.[6] Así las cosas, el 5 de agosto de 2020, el recurrido presentó *Urgentísima Solicitud de Orden* en la que requirió al TPI que emitiera

---

[3] Apéndice de la peticionaria, Anejo 2. Transcrita el 11 de diciembre de 2019 y notificada el 17 de diciembre de 2019.
[4] *Id.*
[5] Apéndice del recurrido, Anejo 1.
[6] Apéndice de la peticionaria, Anejo 6.

una orden a los fines de que la menor se mantuviese matriculada en LCA para cursar el grado kínder.[7] El 6 de agosto de 2020, el TPI emitió una *Orden* mediante la cual no autorizó el cambio de escuela.[8] El 11 de agosto de 2020, la peticionaria instó una *Moción de Reconsideración, Solicitud de Vista Urgente y Otros Extremos*.[9] En ella, presentó su oposición a la *Orden* emitida por el TPI y solicitó el cambio a la escuela Bonneville Bilingual School (en adelante, BBS), como mejor opción educativa para la menor.[10] Luego de celebrada una vista, el 24 de agosto de 2020, el TPI emitió una *Resolución*,[11] en la cual ordenó que la menor que se mantuviera en LCA, ante la ausencia de acuerdo entre los progenitores. Fundamentó su determinación en qué en la vida de la menor habían ocurrido muchos cambios con motivo del divorcio de las partes, mientras que la escuela era una de las pocas variables que podía permanecer como una constante.[12] Así mismo, refirió el caso a la Unidad Social de Relaciones de Familia y Menores, para evaluar a qué escuela debía acudir la menor para agosto del año 2021.[13]

El 9 de noviembre de 2020, la señora Vivian Maldonado Colón, Trabajadora Social de la Oficina de Relaciones de Familia y Menores (en adelante, Trabajadora Social), rindió un *Informe de Labor Realizada*.[14] En dicho informe expuso que la menor: "Muestra cualidades que sugieren muy buena capacidad de ajuste. Entendemos que, de considerarse un cambio de escuela, la menor se encuentra en el mejor momento para el mismo, pues aún no ha echado raíces en la escuela de procedencia".[15] Además, destacó que

---

[7] Apéndice de la peticionaria, Anejo 4.
[8] Apéndice de la peticionaria, Anejo 5.
[9] Apéndice de la peticionaria, Anejo 6.
[10] *Id.*
[11] Apéndice de la peticionaria, Anejo 9. Notificada el 27 de agosto de 2020.
[12] *Id.*
[13] *Id.*
[14] Apéndice del recurrido, Anejo 1.
[15] *Id.*

"no se desprende que el cambio le vaya a afectar ni emocionalmente, ni académicamente".[16]

Posteriormente, el 9 de febrero de 2021, la Trabajadora Social rindió otro *Informe de Labor Realizada*.[17] En dicho informe, volvió a enfatizar que la menor: "Muestra cualidades que sugieren muy buena capacidad de ajuste".[18] No obstante, se recomendó:

> Que se considere la realización de una **evaluación psicométrica/psicoeducativa a la menor para validar o descartar la necesidad** en el área de aprendizaje y sus capacidades académicas para responder a las demandas académicas de la institución educativa actual o a la que se determine matricular de considerarse el cambio escolar.[19] (Énfasis suplido).

Así las cosas, el 18 de marzo de 2021, la peticionaria presentó una *Moción* en la que sugirió como alternativa para la menor, la Escuela Especializada en el Desarrollo de Talentos Dr. Antonio S. Pedreira, la cual es una escuela pública bajo el Departamento de Educación.[20] Además, presentó opciones adicionales, con las cuales no tendría reparo.[21] El 15 de abril de 2021, el recurrido presentó una *Réplica a Escrito sobre Nuevas Alternativas de Colegios y otros*.[22] Respecto a su investigación sobre los ofrecimientos de las demás escuelas, mencionó ofrecimientos que no tenían algunas de las escuelas sugeridas por la peticionaria.[23] Explicó que la menor recibía descuentos en la matrícula, mensualidad, almuerzo y horario extendido, entre otros beneficios, en LCA.[24] Adujo que la menor recibía dichos beneficios, debido a que la abuela paterna trabajaba en LCA. En el *Alegato Suplementario*[25] presentado ante

---

[16] *Id.*
[17] Apéndice del recurrido, Anejo 2.
[18] *Id.*
[19] *Id.*
[20] Apéndice de la peticionaria, Anejo 11.
[21] *Id.* Las otras instituciones educativas propuestas fueron: (i) Colegio Del Carmen en Trujillo Alto, (ii) Creative Learning School en Trujillo Alto, y (iii) Casa Montessori del Niño en Cupey.
[22] Apéndice de la peticionaria, Anejo 12.
[23] *Id.*
[24] *Id.*
[25] El *Alegato Suplementario* fue presentado ante el Tribunal de Apelaciones el 11 de octubre de 2022.

esta Curia, la peticionaria adujo que el descuento era por una suma alrededor de cien ($100.00) dólares mensuales.

Cónsono con la recomendación de la Trabajadora Social, a la menor se le practicó una evaluación psicoeducativa y posteriormente se rindió el *Informe de Evaluación Psicoeducativa.*[26] El resumen interpretativo de las pruebas realizadas reveló que los resultados de las escalas ubicaban a la menor en una clasificación promedio.[27] No obstante, a nivel emocional se identificaron indicadores relacionados con impulsividad, agresividad, inestabilidad, falta de equilibrio o base firme, falta de límites, necesidad de llamar la atención, inmadurez, controles internos insuficientes y ansiedad.[28] Se entendió que dichos hallazgos podrían ser un reflejo de su estado emocional y su ejecución académica.[29] En lo que respecta a su estado emocional, se recomendó evaluación visual para validar o descartar la necesidad de tratamiento correctivo.[30]

Ante esta situación, el 24 de septiembre de 2021, la peticionaria presentó una *Moción,* en la cual solicitó que se permitiera el cambio de la menor a una escuela pública, que proveyera los servicios de educación especial y terapias que la menor necesitaba.[31] Expuso en dicha moción, que los hallazgos del *Informe de Evaluación Psicoeducativa,* fueron que la menor: (i) debía recibir terapia educativa, del habla y lenguaje; (ii) debía ser evaluada en el área de habla, lenguaje y ocupacional; (iii) debía recibir servicios psicológicos; (iv) debía recibir tutorías; (v) necesitaba que la escuela pudiese atender sus necesidades y tener acomodo razonable (tiempo adicional para completar los exámenes y trabajos durante la clase);

---

[26] Apéndice de la peticionaria, Anejo 23A.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] Apéndice de la peticionaria, Anejo 13.

y, (vi) requería asistencia individualizada en el salón de clases y contacto visual con la maestra.[32] Arguyó, además, que LCA no ofrecía esos servicios y que obtenerlos de manera privada sería muy costoso, aún más, cuando la menor cualificaba para que el Departamento de Educación los cubriese.[33] Explicó que el diagnóstico de la menor era trastorno específico de aprendizaje, con dificultad de fluidez en la lectura y en las matemáticas al realizar cálculos; y, que se identificó rezago de más de un (1) año.[34] Acorde con lo anterior, propuso como alternativa dos (2) escuelas públicas.[35]

Así las cosas, el TPI celebró una vista evidenciaria, la cual por motivos de la pandemia ocasionada por el COVID-19, se fragmentó en varias fechas. El foro primario recibió prueba testimonial y documental. En lo que respecta a la prueba testimonial, la parte peticionaria presentó como testigos a: (i) la Trabajadora Social, (ii) la señora Xiomara Figueroa Rivera, Facilitadora del Programa de Educación Especial del Departamento de Educación (en adelante, Facilitadora), y (iii) su propio testimonio. El recurrido no ofreció prueba testimonial.

Habiendo quedado la controversia sometida ante la consideración del foro *a quo*, el 8 de junio de 2022,[36] el TPI emitió *Resolución y Orden* en la cual declaró No Ha Lugar el cambio o transferencia de escuela de la menor, concluyendo que no quedó convencido de que sería en beneficio de esta.[37] Además, ordenó a ambos progenitores continuar con el proceso para que la menor concluyese sus evaluaciones y recibiera los servicios de educación especial mediante el Programa de Educación Especial y que se

---

[32] Apéndice de la peticionaria, Anejo 13 y 23A.
[33] Apéndice de la peticionaria, Anejo 13.
[34] Apéndice de la peticionaria, Anejo 13 y 23A.
[35] Apéndice de la peticionaria, Anejo 13.
[36] Apéndice de la peticionaria, Anejo 1. Transcrita a escrito el 14 de junio de 2022 y notificada el 15 de junio de 2022.
[37] *Id.*

mantuviese informado al foro *a quo* del proceso.[38] Mientras tanto, la menor, comenzaría de inmediato a recibir terapias educativas, ocupacionales y psicológicas de manera privada.[39] Para ello, dispuso que las terapias serían costeadas por la señora Janery Marie Astacio Marrero (en adelante, señora Astacio Marrero) y la señora María De Lourdes Marrero Feliz (en adelante, Marrero Feliz, en conjunto, tías de la menor).[40] No obstante, el TPI expresó que de existir incumplimiento por parte de las tías de la menor, sería responsabilidad del señor Astacio Marrero cumplir con el pago de las mismas.[41] El TPI en dicha *Resolución y Orden* no incluyó determinaciones de hecho y derecho ni hizo referencia a la prueba desfilada.

Inconforme, el 29 de junio de 2022, la señora Vivas Barlucea presentó una *Moción de Reconsideración y en Solicitud de Determinaciones de Hecho y Conclusiones de Derecho.*[42] Solicitó que se reconsiderara la *Resolución y Orden* del 8 de junio de 2022 y que se emitiera una nueva resolución, con las correspondientes determinaciones solicitadas que le permitieran ejercer sus derechos dentro del procedimiento judicial.[43] El mismo día, el TPI declaró No Ha Lugar la moción presentada.[44]

Inconforme aun, la peticionaria recurrió ante este tribunal revisor, mediante un *recurso de Certiorari*, presentado el 28 de julio de 2022, en el cual le imputó al TPI la comisión de los siguientes tres (3) errores:

> **PRIMER ERROR:** Erró y abusó de su discreción el TPI al denegar el cambio de escuela solicitado por la recurrente, obligando a la hija menor de las partes a permanecer en una institución educativa que no ofrece los Servicios de Educación Especial que la niña necesita, siendo ello contrario al mejor

---

[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] Apéndice de la peticionaria, Anejo 25.
[43] *Id.*
[44] Apéndice de la peticionaria, Anejo 26.

bienestar de la niña y demostrando prejuicio, parcialidad y error craso y manifiesto en la apreciación de la prueba.

**SEGUNDO ERROR:** Erró y abusó de su discreción el TPI al denegar el cambio de escuela de una menor con necesidades especiales que ha sido diagnosticada con trastornos específicos de aprendizaje y cuya escuela actual no le provee los servicios de educación especial que necesita por el fundamento de que la recurrente no lo convence.

**TERCER ERROR:** Erró y abusó de su discreción el TPI al emitir una Resolución y Ordena [sic] luego de un proceso que incluyó la celebración de nueve vistas sin emitir determinaciones de hecho ni conclusiones de derecho, privando a la peticionar[i]a de conocer los fundamentos de su determinación para poder ejercer su derecho a recurrir de la misma en violación al debido proceso de ley.

En esa misma fecha, la peticionaria presentó *Urgente Escrito Informativo y Solicitud de Autorización* para que este foro autorizara la presentación de la transcripción de la prueba oral de la vista evidenciaria celebrada de forma fragmentada los días 19 de febrero de 2021, 15 de diciembre de 2021, 26 de enero de 2022, 16, 17 de marzo de 2022, y 8 de junio de 2022, y la presentación del correspondiente alegato suplementario.

En apretada síntesis, el 1 de septiembre de 2022, esta Curia emitió una *Resolución*, en la que concedió término al Hon. José A. Alicea Rivera, juez superior que presidió la vista evidenciaria ante el TPI, para que fundamentara la *Resolución y Orden* emitida el 8 de junio de 2022.[45] El 6 de septiembre de 2022, el TPI emitió, *Resolución* la cual notificó a esta Curia.

Posteriormente, el 11 de octubre de 2022, la peticionaria presentó su *Alegato Suplementario*. En dicho escrito, la parte peticionaria: (i) expresó que la *Resolución* del 6 de septiembre de 2022, emitida por el TPI a raíz de lo dispuesto por esta Curia adolecía de los mismos errores planteados en el *Certiorari*, ya que

---

[45] Conforme lo establece la Regla 83.1 del Reglamento del Tribunal de Apelaciones. Reglamento del Tribunal de Apelaciones, Regla 83.1, 4 LPRA Ap XXII-B.

solo hacía un recuento parcial del tracto procesal del caso y nada indicó con relación a la prueba pericial desfilada descartada, ni a la prueba documental admitida. Solicitó que para que esta Curia pudiese considerar los errores planteados que cometió el TPI en la apreciación de la prueba, era indispensable, que se permitiera presentar la transcripción de la prueba oral desfilada. El 4 de noviembre de 2022, el recurrido presentó su *Alegato en Oposición a Alegato Suplementario – Certiorari*.

Finalmente, luego de ser autorizada por esta Curia, la peticionaria presentó la transcripción de la prueba oral, la cual destacamos fue estipulada por el recurrido. De ahí, el 27 de febrero de 2023, la peticionaria presentó un nuevo *Alegato Suplementario* junto a la transcripción de la prueba oral. Por su parte, el 28 de marzo de 2023, el recurrido presentó *Oposición Suplementaria a Alegato Suplementario del 27 de febrero de 2023*.

Contando con el beneficio de los escritos de ambas partes, procedemos a resolver.

## II

### A. Expedición del recurso de *Certiorari*

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de Procedimiento Civil.[46] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> […]
> El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o

---

[46] R.P. Civ. 52.1, 32 LPRA Ap. V.

resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, **en casos de relaciones de familia**, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. [47] (Énfasis suplido).
[…]

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

[…]
(b) *Recurso de "certiorari"* […]
Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.[48]
[…]

El recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[49] Este recurso es uno extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[50] Distinto al recurso de apelación, el tribunal al que se recurre mediante *Certiorari* tiene discreción para atender el asunto planteado, ya sea expidiendo el auto o denegándolo.[51] Conviene destacar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una

---

[47] R.P. Civ. 52.1, 32 LPRA Ap. V.
[48] R.P. Civ. 52.2 (b), 32 LPRA Ap. V.
[49] *800 Ponce de León, Corp. v. American International Insurance Company of Puerto Rico,* 205 DPR 163, 174 (2020).
[50] *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009).
[51] *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 596 (2011). *Pueblo v. Díaz De León,* 176 DPR 913, 918 (2009).

conclusión justiciera".[52] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[53] La Regla 40 del Reglamento del Tribunal de Apelaciones, esboza los criterios que el Tribunal deberá considerar para expedir un auto de *Certiorari*, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [54]

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[55] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o

---

[52] *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[53] *Id.*
[54] Reglamento del Tribunal de Apelaciones, Regla 40, 4 LPRA Ap XXII-B.
[55] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[56]

## B. La Patria Potestad

La patria potestad es el conjunto de derechos y deberes que corresponde a los padres sobre la persona y el patrimonio de cada uno de sus hijos no emancipados como medio de realizar la función natural que les incumbe de protegerlos y educarlos.[57] A esos efectos, el tribunal investigará si los padres poseen la capacidad, disponibilidad y firme propósito de asumir la responsabilidad de criar los hijos conjuntamente.[58] A su vez, ello implica superar desavenencias personales, y por imperativo, sostener adecuada comunicación para adoptar aquellas decisiones conjuntas que redunden en beneficio y los mejores intereses del menor.[59]

El Código Civil de Puerto Rico dispone que la patria potestad sobre los hijos no emancipados corresponde a ambos padres conjuntamente.[60] La patria potestad conlleva unas facultades y deberes de los padres, entre ellas el de educar a sus hijos.[61] Dicha obligación debe ser ejercida responsablemente, velando bienestar y los mejores intereses del menor.[62]

El Tribunal Supremo ha resuelto en reiteradas ocasiones que, aun cuando los derechos de un progenitor sobre sus hijos poseen un gran arraigo en el campo del derecho de relaciones de familia, estos ceden ante la facultad de *parens patriae* de la cual está investido el Estado de cumplir con su obligación de salvaguardar y proteger el bienestar del menor.[63] La función de *parens patriae* del

---

[56] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[57] *Ex parte Torres*, 118 DPR 469, 473 (1987).
[58] *Id.*, 482.
[59] *Id.*
[60] CÓD. CIV. PR art. 152, 31 LPRA § 591.
[61] CÓD. CIV. PR art. 153, 31 LPRA § 601.
[62] CÓD. CIV. PR art. 166, 31 LPRA § 634.
[63] *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 651 (2016). *Ortiz v. Meléndez*, 164 DPR 16 (2005). *Pena v. Pena,* 164 DPR 949, 959 (2005). *Pena v. Pena*, 152 DPR 820, 832–833 (2000).

Estado es aquella por la cual asume y ejerce en cumplimiento de su deber de brindar protección a los sectores más débiles de la sociedad.[64] En la eventualidad de que un tribunal perciba un conflicto entre intereses ajenos y el mejor interés de un menor, se debe resolver a favor de este último.[65] A luz de lo anterior, el tribunal tiene la potestad de ordenar las investigaciones de índole social que entienda procedentes.[66] A tales efectos, las unidades sociales de relaciones de familia y asuntos de menores tienen como función principal ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración.[67] Además, puede, al amparo de tal facultad, ordenar que los menores involucrados se sometan a evaluaciones sicológicas o siquiátricas cuando las circunstancias lo ameriten.[68]

### C. La Discreción Judicial

Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[69] Es decir, no se intervendrá con la apreciación que de la prueba desfilada haya hecho el foro inferior en ausencia de pasión, prejuicio, parcialidad o error manifiesto.[70] Un tribunal de justicia incurre en un abuso de discreción: (i) cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o (iii) cuando,

---

[64] *Ortiz v. Meléndez,* 164 DPR 16, 27-28 (2005).
[65] *Ortiz v. Meléndez,* 164 DPR 16, 28 (2005).
[66] *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 652 (2016). *Pena v. Pena,* 164 DPR 949, 962 (2005). *Pena v. Pena,* 152 DPR 820, 832–833 (2000).
[67] *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 652 (2016).
[68] *Pena v. Pena,* 164 DPR 949, 962 (2005).
[69] *SLG Zapata-Rivera v. J.F. Montalvo, supra,* 434. *Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).*
[70] *Rivera Pérez v. Cruz Corchado,* 119 DPR 8, 14 (1987).

no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[71]

A su vez, es una norma bien establecida de nuestro sistema de justicia que la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias.[72] Como es sabido los jueces del TPI son quienes están en mejor posición de aquilatar la prueba testifical desfilada, ya que tienen la oportunidad de apreciar de cerca las alocuciones de los testigos, mientras observan sus gestos, contradicciones, dudas, manerismos y titubeos.[73] No obstante, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal revisor.[74] Quiérase decir que, en ausencia de los criterios que han sido mencionados, los tribunales revisores no debemos intervenir con las determinaciones y conclusiones derivadas de la apreciación de la prueba testifical.[75]

El Alto Foro ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[76] A esos efectos, conviene destacar que, la intervención del foro apelativo con la prueba desfilada tiene que estar basada en un análisis independiente y no a base de los hechos que exponen las partes.[77]

---

[71] *Pueblo v. Rivera Santiago, Id.*
[72] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).
[73] *Argüello v. Argüello,* 155 DPR 62, 78-79 (2001).
[74] *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987).
[75] *S.L.G. Rodríguez v. Nationwide*, 156 DPR 614, 623 (2002).
[76] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).
[77] *Hernández v. San Lorenzo Const.*, 153 DPR 405, 425 (2001).

**III**

La peticionaria acude ante esta Curia y nos ha alegado que el foro inferior cometió tres (3) errores que ameritan ser revisados. El *primer error* esgrimido plantea que el TPI abusó de su discreción el al denegar el cambio de escuela, obligando a la menor a permanecer en una institución educativa que no ofrece los Servicios de Educación Especial, siendo ello contrario al mejor bienestar de la niña y demostrando prejuicio, parcialidad y error craso y manifiesto en la apreciación de la prueba. El *segundo error* esgrimido plantea que el TPI abusó de su discreción al denegar el cambio de escuela, por el fundamento de que la peticionaria no lo convenció. Por último, el *tercer error* esgrimido plantea que el TPI abusó de su discreción al emitir una *Resolución y Orden* luego de un proceso que incluyó la celebración de nueves (9) vistas sin emitir determinaciones de hecho ni conclusiones de derecho, privando a la peticionaria de conocer los fundamentos de su determinación para poder ejercer su derecho a recurrir de la misma, en violación al debido proceso de ley. Por estar íntimamente relacionados los errores esgrimidos, procederemos a discutirlos en conjunto. Veamos.

Apuntamos que esta Curia tuvo la oportunidad de estudiar minuciosamente los autos ante nuestra consideración, incluyendo los escritos presentados por ambas partes, los documentos del expediente judicial ante el TPI que fueron incluidos en los apéndices, así como la transcripción de la vista evidenciaria celebrada ante el foro inferior, en la cual ambas partes tuvieron la oportunidad de interrogar y contrainterrogar a los testigos presentados.

Antes de adentrarnos en la discusión, resulta menester destacar que al momento en que se presentó el recurso ante nos: (i) se encontraba *sub judice* la adjudicación de la custodia permanente de la menor en el foro inferior; (ii) la menor estaba atravesando un proceso de múltiples evaluaciones para determinar qué diagnósticos

tiene, que podían afectarle su desempeño educativo y que requerían ser atendidos y (iii) el TPI no contaba con el resultado de dichas evaluaciones, en atención a ello, ordenó a las partes a mantener informado al Tribunal *a quo.*

Destacamos que la controversia ante la consideración del TPI y ahora en revisión ante nos trata exclusivamente sobre cuál es la institución educativa donde debe estudiar la menor. Esta controversia tuvo su génesis durante la pandemia ocasionada por el COVID-19. Es de ver que la menor tuvo una entrada accidentada a la vida estudiantil dado a este evento sin precedente en esta era moderna. La menor estuvo asistiendo de forma virtual a la escuela desde el 16 de marzo de 2020 hasta el 15 de marzo de 2021, con motivo de la pandemia.

Por otro lado, reconocemos que los tribunales tienen amplia discreción en el manejo de los procesos ante su consideración. De igual forma, reconocemos el alto interés del que están revestidos los asuntos de relaciones de familia. Es por esto por lo que, en ausencia de algún factor o situación que apunte a un error manifiesto en derecho o a un fracaso a la justicia, el foro primario, específicamente, la sala de relaciones de familia merece deferencia y está en mejor posición para entender sobre la controversia que nos ocupa, ello en el interés óptimo de la menor.

Coincidimos con la peticionaria en que en la *Resolución y Orden* emitida por el TPI el 8 de junio de 2022, el juez superior que presidió la vista evidenciaria, no expresó los fundamentos para su determinación ni hizo referencia alguna a la prueba desfilada y que se limitó a hacer un recuento de algunos de los incidentes procesales ante el tribunal. Posteriormente, a raíz de la *Resolución* emitida por esta Curia, el mismo juez superior, emitió una *Resolución* el 6 de septiembre de 2022, en la cual de manera escueta emitió determinaciones en ánimos de aspirar cumplir con lo ordenado por

esta Curia. Ante esta situación, al justipreciar esta Resolución colegimos que fue totalmente necesario adentrarnos en la transcripción de la prueba oral, para poder cumplir responsablemente con nuestra función revisora.

Insistimos en que, la controversia ante nos es solo una, la educación de la menor y no otras desavenencias entre las partes, con motivo de su separación y divorcio.

Vemos que producto de la vista evidenciaria, la cual por distintas circunstancias se fragmentó en varias fechas, el 8 de junio de 2022, el TPI emitió *Resolución y Orden* en la que declaró No Ha Lugar el cambio o transferencia de escuela de la menor. Con su curso decisorio, mantuvo a la menor en la escuela LCA. En dicha *Resolución y Orden*, el foro inferior determinó que las terapias privadas que estaría recibiendo la menor serían costeadas por las tías de esta. Por su pertinencia, citamos la determinación del TPI:

> [...]
> Las terapias serán costeadas por la Sra. Janery Marie Astacio Marrero y la Sra. María De Lourdes Marrero Feliz; tías de la menor. De existir incumplimiento por parte de las tías, será responsabilidad de la parte demandada, Sr. Erick Astacio Marrero, cumplir con el pago de las mismas.
> [...]

Con el curso decisorio del TPI, la menor se mantuvo matriculada en LCA, que es una escuela privada. Cónsono a la prueba desfilada, y dado a que la menor se mantuvo en una escuela privada, tomaría algún tiempo en lo que la esta pueda recibir los servicios costeados por el Departamento de Educación, esto, debido a la larguísima lista de espera en el Programa de Educación Especial. Sin embargo, distinto a lo expresado por el foro *a quo*, razonamos que, por el momento, dado a que la menor se mantuvo en la escuela LCA, son los padres de la menor y **no** terceras personas, quienes tienen la obligación legal de proveer para sus necesidades educativas. Entiéndase, ofrecerle las terapias

educativas, ocupacionales y psicológicas de manera privada, mientras que el Programa de Educación Especial puede comenzar a ofrecérselas, de forma gratuita. Sobre el particular, abundaremos.

Según el testimonio de la Facilitadora, a la menor se le estaba evaluando para ser registrada como estudiante de educación especial, de forma tal que se le brindara los servicios de terapia que necesitaba de forma gratuita. Sin embargo, como la menor estaba matriculada en LCA (escuela privada) no recibiría los servicios de forma automática (es decir, en treinta (30) días a partir del registro), sino que entraría en una lista de espera, pendiente a que el gobierno federal asigne los fondos para ofrecerle los servicios gratuitamente. Conforme a su testimonio, el turno de espera para la menor estaba en ese momento aproximadamente en tres mil (3,000). Es decir, aproximadamente tres mil (3,000) solicitudes de servicios previos a la de la menor. Ahora bien, conforme a la prueba desfilada, si el tribunal autorizaba el cambio de escuela a una del sistema público, se le podrían activar los servicios con una corporación de la agencia lo que provocaría que en los siguientes treinta (30) días a la fecha en que fuese matriculada, comenzaría a recibir los servicios. Por su parte, de la prueba desfilada surgió que el recurrido y su familia estaban dispuestos a brindarle a la menor (costear), de forma privada los servicios, hasta que el Programa de Educación Especial se los proveyera.

Ahora bien, el recurrido alzó ante el TPI que parte de la familia paterna costearía las terapias, entiéndase, unas tías de la menor. Sin embargo, los autos del presente caso no reflejan que esos familiares sean parte en este caso como para considerar, si quiera, imponerle una obligación alimentaria. Por tanto, a base de su testimonio, razonamos que será responsabilidad del señor Astacio Marrero cumplir con el pago de estos servicios educativos, en su

totalidad, a pesar de que internamente lo haga con apoyo familiar por la vía paterna, según se comprometió.

Ahora bien, a base de la totalidad de la prueba, y de que el recurrido es quien costeará en su totalidad los servicios antes expresados, por voluntad propia, esta Curia no considera que, en su curso decisorio, el foro primario hubiese actuado con prejuicio, parcialidad o que hubiese cometido un error manifiesto. Más bien, coincidimos con el foro *a quo*, al mantener a la menor en la misma institución educativa, pero tomando la precaución de ordenar a las partes a informar el resultado de las evaluaciones a la menor, para determinar en efecto el diagnóstico final y servicios educativos necesarios.

De esta forma, pero tomando en consideración que el recurrido se comprometió a sufragar los gastos de los servicios educativos recomendados al momento, la menor tendría menos procesos de cambio, mientras culminaba el resto de las evaluaciones. Por tanto, evaluada la determinación recurrida del foro de instancia determinamos que la misma constituye un ejercicio discrecional basado en la razonabilidad y en el interés óptimo de la menor en el ejercicio del *parens patriae*.

A luz de todo lo anterior, aun cuando coincidimos con la peticionaria en que el foro primario falló al no incluir las determinaciones de hecho y conclusiones de derecho para fundamentar su decisión de forma tal que pudiésemos ejercer adecuadamente su función revisora, y que la Resolución emitida por el TPI a raíz de lo ordenado por esta Curia fue una escueta, la presentación de la transcripción de la prueba oral nos colocó en posición de así hacerlo. Luego de evaluar la prueba presentada durante la vista evidenciaria, esta Curia coincide con la apreciación del TPI de mantener a la menor en la misma escuela donde se encuentra matriculada, **al menos** hasta que el foro inferior reciba el

cumplimiento con lo ordenado en la misma *Resolución y Orden* recurrida, entiéndase, el resultado de las evaluaciones de la menor. Será en ese momento en que los progenitores estarán en una mejor posición para evaluar lo más conveniente para su hija, basado en su diagnóstico final y la capacidad económica que tengan estos para emprender la sensible misión de educar por largos años y formar a su hija menor de edad.

En fin, no existe prueba que indique el TPI no haya desplegado juiciosamente su discreción judicial en la búsqueda del interés óptimo de la menor. Recordemos, además, que los asuntos de familia no constituyen cosa juzgada y reiteramos que la vida de los menores es cambiante y dinámica. He aquí, un ejemplo de ello. A esos fines, las determinaciones tomadas por el foro inferior y esta Curia podrían ser reevaluadas cuando se cuente con un panorama más claro sobre los diagnósticos de la menor, producto de las evaluaciones que quedaron pendientes, los servicios educativos que le sean recomendados, sus costos y la capacidad económica con la que cuenten los progenitores para cubrir las mismas.

**IV**

Por los fundamentos que anteceden, y aplicando el alcance en nuestra función como tribunal revisor, se expide el auto de *Certiorari*, se *confirma,* pero se *modifica* la misma, a los fines de que es el señor Astacio Marrero, quien cubrirá los gastos educativos señalados por el foro primario en la *Resolución y Orden* recurrida. Devolvemos el caso al TPI, para que las partes cumplan con la *Orden* emitida por el foro *a quo* y para que le notifiquen los resultados de las evaluaciones a las que se informó sería sometida la menor. De esa forma, los progenitores y, de ser necesario, el foro primario estará en una mejor posición para realizar una determinación permanente, tomando en consideración el diagnóstico final, los

servicios recomendados, así como la capacidad económica de los progenitores para suplir las necesidades educativas que se identifiquen o la conveniencia de que la menor deba ser matriculada en una institución educativa pública.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones